**RICHMERS RHEDEREI ACTIEN GESELLSCHAFT v. SUTHERLAND, Alien Property Custodian, et al.**

Court of Appeals of District of Columbia.

Submitted December 6, 1927. Decided January 9, 1928.

No. 4578.

1. War ⬳12—Alien enemy could not recover property seized during war, before amendment to Trading with the Enemy Act (Trading with the Enemy Act, § 9 [c], as amended by Act March 4, 1923, § 1 [Comp. St. § 3115½e]).

Before amendment of Trading with the Enemy Act, § 9 (c), by Act March 4, 1923, § 1 (Comp. St. § 3115½e), no recovery could be had by alien enemy of property seized during war.

2. War ⬳12—Shipowner's lien on cargo did not make it "owner," within statute authorizing recovery by owner of property seized by United States as that of alien enemy (Trading with the Enemy Act, § 9 [c], as amended by Act March 4, 1923, § 1 [Comp. St. § 3115½e]).

Shipowner's maritime lien on cargo *held* not to make it "owner" in whole or part of such property seized by United States as belonging to alien enemy, within Trading with the Enemy Act, § 9 (c), as amended by Act March 4, 1923, § 1 (Comp. St. § 3115½e), authorizing recovery of property by "owner."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

3. War ⬳12—Alien may recover property seized during World War as belonging to alien enemy only on basis of ownership (Trading with the Enemy Act, § 9 [a]–[c], as amended by Act March 4, 1923, § 1 [Comp. St. § 3115½e]).

Where property was seized as belonging to alien enemy during World War, claimant may recover from Alien Property Custodian under Trading with the Enemy Act, § 9 (a)–(c), as amended by Act March 4, 1923, § 1 (Comp. St. § 3115½e), only on basis of ownership.

Appeal from Supreme Court of District of Columbia.

Suit by Richmers Rhederei Actien Gesellschaft, a German corporation, against Howard Sutherland, as Alien Property Custodian, and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

R. T. Strickland, of Washington, D. C., for appellant.

D. H. Stanley, Peyton Gordon, S. T. Ansell and E. S. Bailey, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia dismissing appellant's bill, filed under the provisions of subsection (c) of section 9 of the Trading with the Enemy Act, as amended March 4, 1923, 42 Stat. 1511 (Comp. St. § 3115½e).

The material averments of the bill are as follows: The "Amur Shipping & Trading Company was and is a corporation organized and existing under the laws of Russia." In the year 1914 that company, hereinafter referred to as the Shipping Company, shipped on board the steamship Camilla Richmers, owned by the appellant, 3,036 tons of soya beans, for carriage from Nikolajefsk, Russia, to Hamburg, Germany; the beans being the property of the Shipping Company. The Camilla Richmers, in part fulfillment of the contract, carried the beans from the port of lading to Manila, Philippine Islands, where the ship and beans, on the 5th of February, 1917, were seized by the United States government. The beans were taken off the ship and sold, and the proceeds deposited with the Alien Property Custodian or the Treasurer of the United States. "According to the law of the republic of Germany," under which the contract of affreightment was made, the entire freight was due as soon as the voyage was commenced, and the ship had a lien upon the merchandise shipped for the entire freight money, amounting in this case

to $19,201.64. Under the act to which reference has been made, appellant is entitled to the sum of $10,000, out of the fund held by the Alien Property Custodian or Treasurer of the United States. Prior to the bringing of this action, the President of the United States disallowed the claim.

The Custodian and Treasurer filed motions to dismiss the bill, upon the ground that the act in question does not authorize an enemy to recover out of moneys held by the Custodian or Treasurer the amount of a debt owing 'to it by an alien enemy. The Shipping Company likewise filed a motion to dismiss, upon the same ground and the additional ground "that the alleged contract of affreightment was an unperformed and unexecuted contract at the time of the breaking out of the war between the German government and the Russian government," and that upon the breaking out of the war the "alleged contract of affreightment became and was dissolved and abrogated, and can furnish no basis for the assertion of any right to a lien on the beans mentioned in said bill of complaint or the proceeds realized from the sale thereof."

The court disposed of the case upon the first ground of the motions, without mention of the second ground. In the brief filed in this court on behalf of the Shipping Company, it is alleged that "the seizure of the beans by the Alien Property Custodian was a lawful seizure, and operated to destroy any right of lien which the appellant may have had." It must be assumed, therefore, that the real owners of the Shipping Company were alien enemies, since there could be no valid seizure of the property of other than alien enemies. As to the appellant, there is no denial, of course, that it was an alien enemy at the time of the seizure.

[1, 2] Appellant's rights must be determined, therefore, under the provisions of the amended Trading with the Enemy Act. 42 Stat. 1511. Prior to this amendment, no recovery whatever could be had by an alien enemy. Under subsection (b) of the amended act, provision is made for the recovery by citizens and corporations of Germany of an amount, not exceeding $10,000 in money or property of that value, of which they were the owners at the time of the seizure, the material provisions of that subsection being as follows:

"In respect of all money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, if the President shall determine that *the owner thereof* at the time such money or other property was required to be so conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or at the time when it was voluntarily delivered to him or was seized by him, was * * * a partnership, association, other unincorporated body of individuals, or corporation, and that it is not otherwise entitled to. the return of its money or other property, or any part thereof, under this section, and that such money or other property, or the proceeds thereof, if the same has been converted, does not exceed in value the sum of $10,000, or although exceeding in value the sum of $10,000, is nevertheless susceptible of division, and the part thereof to be returned hereunder does not exceed in value the sum of $10,000. * * * Then the President, without any application being made therefor, may order the payment, conveyance, transfer, assignment, or delivery of such money or other property held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine such person entitled, either to *the said owner* or to the person by whom said property was conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian. * * * And the receipt of *the said owner* or of the person by whom said money or other property was conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian shall be a full acquittance and discharge of the Alien Property Custodian or the Treasurer of the United States, as the case may be, and of the United States in respect to all claims of all persons heretofore or hereafter claiming any right, title, or interest in said money or other property, or compensation or damages arising from the capture of such money or other property by the President or the Alien Property Custodian." (Italics supplied.)

Subsection (c) provides:

"Any person whose money or other property the President is authorized to return under the provisions of subsection (b) hereof may file notice of claim for the return of such money or other property, as provided in subsection (a) hereof, and thereafter may make application to the President for allowance of such claim and/or may institute suit in equity to recover such money or other property, as provided in said subsection, and with like effect. * * *"

Assuming, for present purposes, that appellant's maritime lien had not been extin-

guished at the time of the seizure of the beans (but see Arnhold Karberg & Co. v. Blythe et al., 85 Law Journal [K. B.] 665, and U. S. v. Chemical Foundation, Inc., 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131), we are of the view that the lien did not make appellant the owner in whole or in part of the property seized, within the meaning of the Trading with the Enemy Act as amended. In Ex parte Foster, Fed. Cas. No. 4,960, Mr. Justice Story, sitting as a Circuit Judge, said: "But it has been long the established doctrine in equity, that a lien is not, in strictness, either a jus in re, or a jus ad rem; that is, it is not a property in the thing itself, nor does it constitute a right of action for the thing." See, also, Meany v. Head, Fed. Cas. No. 9,379, and United States v. Gillis, 95 U. S. 407, 24 L. Ed. 503.

[3] Since this property was not "conveyed, transferred, assigned, delivered or paid over to the Alien Property Custodian," but was seized as belonging to an alien enemy, the claimant could recover only upon the basis of ownership.

The repeated references in the statute to the "owner" not only are unaccompanied by any qualifying provisions, changing in any way the ordinary significance of that term, but the language actually used is inconsistent with any qualification. In other words, we think it quite clear that Congress in this statute intended to recognize and did recognize only those whose interest in the seized thing amounted to ownership, as that term has been understood and defined.

It results that the decree must be affirmed, with costs.

Affirmed.